OPINION *Page 2 
{¶ 1} Defendant-appellant Michael S. Berry appeals his conviction and sentence entered by the Delaware County Court of Common Pleas, on one count of trafficking in crack cocaine, in violation of R.C.2925.03(A)(2); and two counts of possession of cocaine, in violation of R.C. 2925.11(A), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On August 12, 2005, the Delaware County Grand Jury indicted Appellant on the aforementioned charges. Appellant appeared before the trial court and entered a plea of not guilty at his arraignment on August 17, 2005. On September 21, 2005, Appellant filed a Motion to Suppress, raising constitutional challenges to the initial stop of his vehicle, his detention, and subsequent arrest as well as the search and seizure of his vehicle. The State filed a memoranda contra on October 5, 2006. The trial court scheduled a suppression hearing for October 6, 2005.
 {¶ 3} At the hearing, Deputy Jason Campbell of the Delaware County Sheriffs Office testified he was patrolling the area of U.S. 23, shortly after midnight on August 5, 2005, when he noticed the vehicle in front of him, a 1997 Dodge Stratus, did not have a license plate. The deputy stated the only thing he saw was "[a] portion of what appeared to be some kind of identifying tag in the rearview window." Suppression Hearing Tr. at 30. Deputy Campbell activated his cruiser's overhead beacons. The driver of the vehicle, who was subsequently identified as Appellant, drove into a Speedway gas station and parked by a gas pump. Deputy Campbell pulled in behind *Page 3 
the vehicle and exited his cruiser. As the deputy walked toward Appellant's vehicle, he noticed a temporary tag in the rearview window, which was partially falling down.
 {¶ 4} Deputy Campbell testified as he approached Appellant's vehicle, he detected the odor of burning marijuana emanating from the vehicle. The deputy made contact with Appellant, informing Appellant of the reason for the stop. Deputy Campbell asked Appellant for his license, registration and insurance. Deputy Campbell ran Appellant's information through the LEADS system. Appellant's license and insurance returned expired, and the temporary tag returned, "None on file". When the deputy advised Appellant of this information, Appellant could not provide an explanation for the tags, but insisted his driver's license was valid. Appellant showed Deputy Campbell the metal plates which were in the trunk of the vehicle. The deputy ran the plates through the LEADS system, which showed the vehicle currently registered in Appellant's name.
 {¶ 5} Deputy Aaron Kamerer and Sgt. Spring arrived at the scene. The deputies placed Appellant in the back of Campbell's cruiser and returned to the vehicle to speak with the female passenger. The female passenger, who was identified as Sheila Lampley, was placed in Deputy Kamerer's cruiser for precautionary reasons. When Deputy Campbell asked Appellant about the marijuana odor, Appellant explained there were people in the vehicle earlier in the day who were smoking marijuana.
 {¶ 6} The deputies impounded the vehicle because neither Appellant nor his passenger had valid driver's licenses and the vehicle was blocking an island of gas pumps. Deputy Campbell, Deputy Kamerer, and Sgt. Spring conducted an inventory search of the vehicle at the time of impound. Deputy Campbell stated the inventory search of Appellant's car was conducted pursuant to the standardized policy of the *Page 4 
Delaware County Sheriffs Office. The items found during the inventory search included trash, papers, packages, and clothes. The deputies transported Appellant to the Delaware County Jail, where he was issued a citation for driving with an expired license, no operator's license, and unreadable license plates.
 {¶ 7} Detective Stan Otto of the Delaware County Sheriffs Office testified he was working on the morning of April 5, 2005, when he received a telephone call from a bailiff at the municipal court. The bailiff informed the detective a female, who was in the lobby of the courthouse wished to speak to a detective in reference to narcotics. Detective Otto proceeded to the municipal court where he spoke to the woman. The woman indicated her boyfriend had been arrested the prior evening. While she was outside the Delaware County Jail earlier that morning, she met the passenger in Appellant's vehicle, Sheila Lampley. The woman told Detective Otto Lampley indicated there was approximately three ounces of cocaine in a red Nabisco Teddy Grahams box in the center of the backseat of Appellant's vehicle. After leaving the municipal court, Detective Otto contacted the on-call K-9 deputy, Deputy Troy Gibson, and requested the deputy and his dog meet him at Don's Towing, where Appellant's vehicle was impounded.
 {¶ 8} When Deputy Gibson arrived with his K-9 partner, Rocky, Detective Otto advised Deputy Gibson of the information he [Detective Otto] had received. As Deputy Gibson walked Rocky around the perimeter of Appellant's vehicle, the dog alerted at the rear passenger door. Deputy Gibson remained at the scene while Detective Otto obtained a search warrant. Detective Otto subsequently executed the search warrant. During the search, the detective found a red Nabisco Teddy Grahams box in the *Page 5 
backseat of the vehicle as per the information he received from the female informant. Detective Otto opened the box and removed the aluminum packaging. Inside, he found teddy bear shaped snacks as well as two baggies of white powdery substance and individually wrapped baggies of a white rock substance. Detective Otto conducted a field test on the white powdery substance, which indicated positive for cocaine.
 {¶ 9} Via Judgment Entry filed February 24, 2006, the trial court denied Appellant's Motion to Suppress. The matter proceeded to jury trial on February 28, 2006, and March 1, 2006. On the first morning of trial, the State moved to amend Counts 1 and 3 of the Indictment from second degree felonies to third degree felonies. The trial court granted the State's request. Prior to the commencement of the trial, counsel for Appellant advised the trial court Appellant had been brought to court in the same clothes he was wearing at the time of his arrest, and was shackled. Defense counsel requested Appellant be provided with more appropriate clothing and the restraints be removed while Appellant was in the presence of the jury. The trial court refused to provide alternative clothing, explaining because the clothes Appellant was wearing were not prison garb, his attire was fine. The trial court ordered the handcuffs be removed, but not the leg irons. Defense counsel objected. The trial court subsequently instructed the prospective jurors not to draw any inferences from the fact Appellant was restrained in leg shackles.
 {¶ 10} Prior to the prospective jurors entering the courtroom, the trial court explained its procedure for voir dire. The trial court advised counsel the examination should include all of the prospective jurors, not just those in the jury box. During voir dire, Rita Stevenson, a prospective juror, was called from the gallery to replace another *Page 6 
prospective juror who had been excused from the jury box through a peremptory challenge by the State. Defense counsel requested an opportunity to examine Stevenson. The trial court refused the request, indicating defense counsel did not inquire of her while she was seated in the gallery. The trial court reiterated its voir dire procedure. Counsel for Appellant indicated he was unaware of this procedure and objected to the trial court's denial of his request to examine Stevenson. Juror Stevenson ultimately served as the foreperson of the jury.
 {¶ 11} On the morning of trial, Appellant filed a motion in limine, asking the trial court to prohibit any mention of the odor of burning marijuana emanating from Appellant's vehicle at the time of the stop. The trial court did not rule on the motion, but instructed counsel to refrain from mentioning marijuana during voir dire. The trial court indicated it would address the motion later.
 {¶ 12} During the direct examination of Deputy Campbell, the State elicited testimony regarding Appellant's admission to him at the time of the stop there were people smoking marijuana in the car earlier that day. Defense counsel objected, which the trial court sustained. The trial court instructed the jury to disregard the question and answer.
 {¶ 13} Appellant attempted to introduce evidence he had recently sold the Dodge Stratus to his passenger, Sheila Lampley, and had transferred title to her prior to August 5, 2005. Despite Appellant's implication he had given these documents to Deputy Campbell, on cross-examination, the deputy testified he could not recall Appellant providing him with any paperwork at the time of the stop. Counsel for Appellant did not try to refresh the deputy's recollection. However, during the cross-examination of *Page 7 
Detective Otto, defense counsel inquired about whether Appellant had provided Detective Campbell with certain documents. The trial court would not permit Detective Otto to answer because he was not at the scene of the stop.
 {¶ 14} After hearing all the evidence and deliberations, the jury found Appellant guilty of all three counts charged. The trial court sentenced Appellant to an aggregate term of imprisonment of eleven years.
 {¶ 15} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:
 {¶ 16} "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF HIS IMPROPER ARREST FOR A MINOR MISDEMEANOR OFFENSE AND THEREBY VIOLATED APPELLANT'S RIGHTS GUARANTEED UNDER ARTICLE I, SECTIONS 10 AND 14 OF THE OHIO CONSTITUTION AND HIS RIGHT TO DUE PROCESS AND EQUAL PROTECTION GUARANTEED UNDER THEFIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 {¶ 17} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED THE APPELLANT'S RIGHTS UNDER THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTIONS 10 AND 14, OF THE OHIO CONSTITUTION WHEN IT ALLOWED THE USE OF EVIDENCE, WHICH WAS OBTAINED AS A RESULT OF AN INVALID SEARCH WARRANT, UNDER THE GOOD-FAITH RELIANCE EXCEPTION TO THE EXCLUSIONARY RULE. *Page 8 
 {¶ 18} "III. THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND FUNDAMENTAL FAIRNESS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS BY ORDERING THAT APPELLANT REMAINED SHACKLED FOR SECURITY PURPOSES THROUGHOUT THE JURY TRIAL DESPITE THE ABSENCE OF ANY INDICATION IN THE RECORD THAT APPELLANT WAS A SECURITY RISK.
 {¶ 19} "IV. THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S RIGHTS TO A JURY TRIAL AND TO DUE PROCESS AND FUNDAMENTAL FAIRNESS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS BY NOT PERMITTING APPELLANT'S COUNSEL TO VOIR DIRE THE JUROR WHO SERVED AS FOREPERSON OF THE JURY.
 {¶ 20} "V. THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND FUNDAMENTAL FAIRNESS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS BY FAILING TO DECLARE A MISTRIAL WHEN THE ARRESTING DEPUTY TESTIFIED ABOUT PROHIBITED MATTERS IN CONTRAVENTION TO THE TRIAL COURT'S ORDER GRANTING APPELLANT'S MOTION IN LIMINE.
 {¶ 21} "VI. THE TRIAL COURT ERRED IN PROHIBITING APPELLANT'S COUNSEL FROM CROSS EXAMINING A STATE'S WITNESS, ADMITTING PROFFERED EVIDENCE OR MENTIONING IN THE PRESENCE OF THE JURY MATTERS CONCERNING A TRANSFER OF OWNERSHIP OF THE VEHICLE, IN WHICH THE DRUGS WERE SEIZED, THEREBY VIOLATING APPELLANT'S RIGHTS TO PRESENT A MEANINGFUL DEFENSE AS GUARANTEED BY THE DUE *Page 9 
PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND, OR THE COMPULSORY PROCESS OR CONFRONTATION CLAUSES OF THE SIXTH AMENDMENT TO THE UNITED STATES AND OHIO CONSTITUTIONS AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.
 {¶ 22} "VII. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY REFUSING TO TAKE JUDICIAL NOTICE OF OR INSTRUCT THE JURY ON THE APPLICABLE LAWS REQUIRING THE IMMEDIATE REMOVAL OF LICENSE PLATES UPON THE TRANSFER OF OWNERSHIP OF A MOTOR VEHICLE AND THE ISSUANCE OF TEMPORARY REGISTRATION TAGS TO THE TRANSFEREE, WHICH INSTRUCTIONS WERE ESSENTIAL TO THE NECESSARY [SIC] FOR THE JURY TO AND THEREBY VIOLATED APPELLANT'S RIGHTS TO PRESENT A MEANINGFUL DEFENSE GUARANTEED BY THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND, OR THE COMPULSORY PROCESS OR CONFRONTATION CLAUSES OF THE SIXTH AMENDMENT TO THE UNITED STATES AND OHIO CONSTITITUIONS AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 {¶ 23} "VIII. CUMULATIVE ERROR DURING THE COURSE OF THE PROCEEDINGS PREJUDICED THE APPELLANT'S SUBSTANTIAL RIGHTS UNDER THE FIFTH, SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATE [SIC] CONSTITUTION AND ARTICLE1, SECTION 10 OF THE OHIO CONSTITUTION." *Page 10 
 I {¶ 24} In his first assignment of error, Appellant maintains the trial court erred in overruling his motion to suppress and, as a result, violated his constitutional rights.
 {¶ 25} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See, State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App .3d 623, 620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S., (1996),517 U.S. 690, 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Page 11 
 {¶ 26} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594 (citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778, 1992 W L 91647.
 {¶ 27} Initially, we must address Appellant's assertion the trial court should have suppressed the evidence obtained during the search of the vehicle because Deputy Campbell illegally arrested him on a minor misdemeanor. Deputy Campbell charged Appellant with violations of R.C.4510.12(A)(1) and (B)(1). R.C. 4510.12 provides as follows:
 {¶ 28} "(A)(1) No person, except those expressly exempted under sections 4507.03, 4507.04, and 4507.05 of the Revised Code, shall operate any motor vehicle upon a public road or highway or any public or private property used by the public for purposes of vehicular travel or parking in this state unless the person has a valid driver's license issued under Chapter 4507. of the Revised Code or a commercial driver's license issued under Chapter 4506. of the Revised Code.
 {¶ 29} "* * *
 {¶ 30} "(B) Whoever violates this section is guilty of operating a motor vehicle without a valid license and shall be punished as follows:
 {¶ 31} "(1) If the trier of fact finds that the offender never has held a valid driver's or commercial driver's license issued by this state or any other jurisdiction, the offense is a misdemeanor of the first degree. *Page 12 
 {¶ 32} "(2)(a) Subject to division (B)(2)(b) of this section, if the offender's driver's or commercial driver's license or permit was expired at the time of the offense for no more than six months, the offense is a minor misdemeanor * * *." R.C. 4510.12.
 {¶ 33} The State contends Deputy Campbell had probable cause to arrest Appellant on two separate offenses, a violation of R.C. 4510.12 (A)(1), no operator's license; and a violation of (B)(1), expired license. We disagree. Subsections (A)(1) and (B) are not two distinct offenses. Subsection (A)(1) defines the offense, while subsections (B)(1) through (4) specify the degree of the offense based upon the existence of certain factors. On the citation, Deputy Campbell indicated Appellant's driver's license had been expired for six months or less, citing the violated statute as "4510.12(B)(1)". Subsection(B)(1) only applies if the offender has never had a valid driver's license. Appellant should have been charged with (B)(2), a minor misdemeanor. Deputy Campbell's characterization of the violation of (A)(1) as a first degree misdemeanor and the violation of (B)(1) as a minor misdemeanor does not elevate Appellant's offense from a minor misdemeanor to a misdemeanor of the first degree. Accordingly, the deputy had no lawful authority to arrest Appellant. However, this does not, in and of itself, render the evidence obtained during the search "fruits of the poisonous tree".
 {¶ 34} Once Deputy Campbell ran Appellant's driver's license through the LEADS system, and learned his license was expired, and subsequently learned the passenger did not have a valid driver's license, the deputy was entitled to lawfully impound the vehicle because the deputy initiated the stop which led to the vehicle being left on private property. Any evidence obtained as a result of the impound was not the *Page 13 
fruit of Appellant's unlawful arrest. Accordingly, we find the trial court did not err in denying Appellant's motion to suppress.
 {¶ 35} Appellant's first assignment of error is overruled.
 II {¶ 36} In his second assignment of error, Appellant contends the trial court erred in allowing the State to use evidence obtained during a search, which was executed under an invalid search warrant, upon a finding the good faith reliance exception to the exclusionary rule applied.
 {¶ 37} The right to be free from unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution, which provides that no warrant shall issue but upon probable cause. When the sufficiency of an affidavit submitted in support of a search warrant is in question, the duty of the reviewing court is to determine whether the issuing judge had a substantial basis to conclude that probable cause existed. State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640 ¶ 2, of the syllabus, following Illinois v. Gates (1983), 462 U.S. 213,238-239, 76 L.Ed.2d 527, 103 S.Ct. 2317. The appellate court is not charged with a de novo review of the sufficiency of information set forth to obtain the warrant. In making the determination of whether there was a substantial basis to conclude that probable cause existed, the reviewing court must "make a practical, commonsense decision whether given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at paragraph 1 of the syllabus. *Page 14 
 {¶ 38} In its judgment entry, ruling on Appellant's motion to suppress, the trial court found:
 {¶ 39} "In this case, the municipal judge did not properly ascertain the reliability of Rocky. That is, he merely asked Detective Otto if Rocky was reliable, and did not inquire further into Rocky's record or ask for an Affidavit of Rocky's trainer. Therefore, the court finds the search warrant issued was deficient. * * *
 {¶ 40} "* * * the bare bones affidavit upon which the search warrant was issued and the magistrate's failure to establish the reliability of the canine indicate that the municipal judge did not have a substantial basis to find probable cause to issue the warrant. However, the good faith exception applies to this situation because the reliance on the warrant by Detective Otto was reasonable. It is evident that Detective Otto's reliance upon the search warrant was reasonable, despite any error that may have been made by the municipal judge as to the sufficiency of probable cause contained within the affidavit and the lack of proper findings as to the reliability of the canine. Accordingly, the good faith exception to the exclusionary rule applies and therefore, Defendant's Motion to Suppress is hereby DENIED." February 24, 2006 Entry.
 {¶ 41} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures and provides "* * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Pursuant to the exclusionary rule, "* * * all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." Mapp v. Ohio *Page 15 
(1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081. Pursuant to the "good faith exception" to the exclusionary rule, however, evidence should not be suppressed when it is obtained by a reasonably well-trained police officer acting in objectively reasonable good faith reliance on a search warrant subsequently found deficient. United Statesv. Leon (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677.
 {¶ 42} Appellant submits Detective Otto, the sole affiant of the affidavit in support of the search warrant as well as the deputy who executed the warrant, "clearly knew or should have known that the bald reference to information received from a confidential source [the woman he spoke with at Municipal Court], without more, was patently insufficient on its face to support a finding of probable cause"; therefore, the deputy's reliance upon the warrant was not objectively reasonable. Brief of Appellant at 20. We believe appellant's argument is misguided. If Det. Otto had reasonable belief of Rocky's reliability, the fact Rocky alerted is sufficient corroboration of non-neutral details thereby supporting a belief in the informant's reliability. The focus of our inquiry is whether Det. Otto relied in good faith on the magistrate's finding of probable cause to issue the search warrant.
 {¶ 43} Based upon the totality of the circumstances, we find Detective Otto's execution of the search warrant was objectively reasonable given the information known by him at the time, but not presented to the issuing magistrate. United States v. Marion (8th CCA. 2001) 238 F 3d 965, 969. In determining whether probable cause exists to support the issuance of a search warrant, a trial court is confined to the four corners of the affidavit and any recorded testimony made part of the affidavit pursuant to Crim.R. 41(C). See, State v. Wesseler (Feb. 17, 1998), Butler App. No. CA96-07-131, and *Page 16 
Crim.R. 41(C). However, in determining whether the good faith exception to the exclusionary rule applies, numerous courts have held a trial court may look beyond the four corners of the affidavit and consider unrecorded oral testimony to determine whether the officer executing the search warrant did so in good faith reliance on the magistrate's issuance of the search warrant. See, Wesseler, supra; Moya v. .State (1998), 335 Ark. 193, 202, 981 S.W.2d 521, 525-526, cited in Katz, Ohio Arrest, Search and Seizure, (2002 Ed.) 151, Section 8.2, fn. 2, andUnited States v. Curry (C.A.8, 1990), 911 F.2d 72, 78 (cited inMoya). The principle in cases like Wesseler, Moya, and Curry is consistent with the statement in Leon that "all of the circumstances" may be considered in determining whether a reasonably well-trained police officer would have known that the search was illegal despite the magistrate's authorization. Leon, 468 U.S. at 922-923, fn. 23.
 {¶ 44} Accordingly, we hold a trial court may go beyond the four corners of an affidavit submitted in support of a search warrant subsequently found to be invalid and consider unrecorded oral testimony to determine whether the police officer executing the search warrant did so in good faith reliance upon the magistrate having found probable cause to issue it. In this case, Det. Otto was aware of Rocky's reliability. Rocky corroborated the informant's tip; therefore, Det. Otto executed the warrant in good faith.
 {¶ 45} Appellant's second assignment of error is overruled. *Page 17 
 III {¶ 46} In his third assignment of error, Appellant contends the trial court erred and violated his right to a fair trial by ordering he remain shackled throughout the entire trial.
 {¶ 47} Courts have long recognized a defendant's right to the "physical indicia of innocence" under the Due Process Clause of theFourteenth Amendment to the United States Constitution. Kennedy v.Cardwell (C.A.6, 1973), 487 F. 2d 101, 104, certiorari denied (1974),416 U.S. 959, and Birt v. Montgomery (D.C.Ga., 1982), 531 F.Supp. 815,819, certiorari denied (1984), 469 U.S. 874. "No one should be tried while shackled, absent unusual circumstances." State v. McKnight (2005),107 Ohio St.3d 101, 131, citing Illinois v. Allen (1970), 397 U.S. 337,344. Imposing the indicia of guilt upon a defendant is an "inherently prejudicial" practice which "should be permitted only where justified by an essential state interest specific to each trial." Ruimveld v.Birkett (2005), 404 F.3d 1006, 1013, citing Holbrook v. Flynn (1986),475 U.S. 560, 568-569. However, the determination of whether to use restraints must be left to the discretion of the trial court because the court must weigh the defendant's right to a fair and impartial trial against the need to protect the people involved in the judicial process and prevent the defendant's escape. The court is in the best position to assess the defendant's conduct inside and outside the courtroom to make this determination. Woodards v. Cardwell, (C.A. 6 1970), 430 F.2d 978,982; Birt v. Montgomery, supra, and State v. Franklin, 97 Ohio St. 3d 1,2002-Ohio-5304 at ¶ 79. The need to prevent violence or escape must be particularized, articulated on the record, and specific to appellant's conduct at this particular trial citing Deck v. Missouri (2005),Lakin v. Stine (2005) *Page 18 431 F. 3d 959, 965, 544 U.S. 622, 633. A trial court also has a duty to determine whether there is a "less prejudicial but adequate means of providing security." Id. at 964.
 {¶ 48} On appeal, the appellate court presumes there was prejudice to the appellant and determines whether there was sufficient justification for the use of restraint and there was no less drastic alternative available. Kennedy v. Cardwell, supra, at 107. The appellate court will not reverse the trial court's decision, however, unless it determines the trial court abused its discretion. State v. Woodards (1966),6 Ohio St.2d 14, 23, certiorari denied (1966), 385 U.S. 390. "[S]ound discretion has long meant a discretion that is not exercised arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. Langnes v. Green, 282 U.S. 531, 534."Woodards v. Cardwell, supra. Even though the decision is discretionary, the trial court must state the facts it considered on the record to enable the appellate court to review the decision. State v. Morgan
(1992), 84 Ohio App.3d 229, 231-232, and State v. Carter (1977),53 Ohio App.2d 125, 132.
 {¶ 49} In the instant action, the trial court's reason for having appellant shackled was a general statement about the need for security given the climate of the world today. The record is devoid of any evidence to justify the use of shackles and the interest asserted (need for security) was not specific to appellant. There was no evidence appellant was disruptive or defiant prior to or during the trial. In fact, at sentencing, the trial court complimented appellant's gentlemanly behavior. Because there were no unusual circumstances justifying the shackling of appellant, we find the use of restraints was unnecessarily prejudicial. *Page 19 
 {¶ 50} Appellant's third assignment of error is sustained.
 IV, V, VI, VII, VIII {¶ 51} In light of our disposition of Appellant's third assignment of error, we find Appellant's fourth, fifth, sixth, seventh and eighth assignments of error to be moot.
 {¶ 52} The Judgment of the Delaware County Court of Common Pleas is affirmed in part, and reversed in part and remanded to that court for further proceedings.
By: Hoffman, J. Gwin, P.J. and Edwards, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings according to our opinion and the law. Costs assessed to appellee. *Page 1